Duer, J.
Yielding to the weight of authority, I concur in granting a new trial — but I do so, I own, with great reluctance. In my opinion, the ruling on the trial is fully justified, not only by the reasoning óf Mr. J. Cowen, but by the decision of the court, in the People v. Rector, (19 Wend. 569,) which was followed in the People v. Carter, (2 Hill, 319.) But these cases,-1 am also of opinion, were in effect overruled by the subsequent decision of the same court, in the People v. Hulse, (3 Hill, 369,) and I find upon inquiry, that the rule laid down in this last case, namely, that evidence of the good character of a witness can only (be received when his character has been attacked by the adversé party, has been uniformly followed in this court. The question therefore, at least in this court, can no longer be considered as open '; but were it so, and could it now be determined by an appeal to reason and good sense, I should not hesitate to hold that evidence of the good character of a witness ought to be admitted, in every ease, in which the veracity of the witness, and not merely the truth of his testimony, is denied by the adverse party. An attack ujjon the moral character of a witness is permitted because when successful, it creates a probability that he has sworn falsely in the testimony that he has given; and it cannot be denied, that an opposite probability ⅛ created when the character, of the witness, as a man of integrity and truth, is fully established. It therefore seems to me, that the evidence is in its nature, corroborative, and as such, ought to be admitted in every case in which intentional falsehood, no matter upon what ground, is imputed to a witness. There is a fallacy in the assertion that when the general character of a witness has not been impeached -by the adverse party, it' is admitted to be good. All that is admitted is, that his character cannot be shown to be positively bad, but this is no reason for excluding evidence to show that it is positively good— nor is it difficult to see, that in many casés, the exclusion of such evidence may be a source of error and injustice. The relation given by a witness may be very improbable in itself, yet perfectly true, for experience attests the justness of the observation, that “ truth is not unfrequently stranger than fictionbut it is ob- *423 vieras, tliat the improbability of tbe relation, may lead a jury to discredit a witness, whom, if it was clearly proved to them that he was a man distinguished for his probity and strict adherence to truth,, they would not hesitate to believe. It is obvious that the probability that he had sworn truly, arising from the moral excellence of his character, might very reasonably outweigh, in the minds of the jury, the opposite probability, arising from the nature of the facts to which he had testified.
In judging of the credit to be given to a narrative, where the facts are remarkable and unusual, we are all of us governed by the knowledge we have, or the estimate we have formed, of the moral character of the person from whom the narrative proceeds; and it is not easy to understand, why the evidence that determines the judgment of every reasonable person, in the ordinary transactions of life, should be withheld from the consideration of a j™7-
As it seems, however, that the law is otherwise settled, and that the evidence given on the trial of the good character of a witness, whose veracity was denied, was improperly admitted, there must be a new trial.*

 By a recent decision in the Court of Appeals the rule laid down in the People v. Hulse, is definitively settled to be the law. (The People v. Gay, 3 Selden, p. 378.)